Davis *et al. v.* Langsdale.

---

## DAVIS ET AL. *v.* LANGSDALE.

MORTGAGE.—*Foreclosure.—Redemption.—Statute.*—L. held a mortgage on certain real estate to secure the payment of four promissory notes, payable in one, two, three, and four years, executed by B. The first note was paid when due, and L. assigned the second to G. When that note became due, G. instituted suit to foreclose the mortgage and collect the note, making L. and certain other junior incumbrancers parties as defendants. L. filed a cross complaint setting up his notes and uniting with G. in the request for the foreclosure of the mortgage. The decree declared the rights of G., L., and other junior incumbrancers. The order of sale was issued at the instance of G., and the property was purchased by him for a sum only sufficient to pay his judgment, and he received the sheriff's certificate. Within the year, L. paid to the clerk the amount of the bid of G., with ten per cent. interest, for the purpose of redeeming. The clerk made the entry showing the redemption, which, however, G. refused to recognize.

*Held,* in a proceeding instituted by L. to establish and enforce his right to redeem, that L. was entitled to redeem the premises under the statutory provision.

APPEAL from the Marion Civil Circuit Court.

DOWNEY, J.—This was an action commenced by the appellee against the appellants, to establish and enforce his right to redeem certain real estate, which had been sold by

the sheriff, under, and in accordance with, the act of the legislature of June 4th, 1861, found in 2 G. & H. 251. There was a demurrer to the complaint, the demurrer overruled, an answer filed by the defendants, and a demurrer sustained to it. Proper exceptions were taken. Final judgment was rendered for the plaintiff, and the defendants appealed. The errors assigned are, the sustaining of the demurrers to the first and second paragraphs of the answer, in not sustaining the demurrers to the complaint, and in rendering final judgment in favor of the appellee. We need not set out the pleadings in full, nor examine the errors assigned in order. There is but a single question involved, and that can be understood by a short statement of the facts. Langsdale held a mortgage on certain real estate to secure the payment of four promissory notes, payable in one, two, three, and four years from date, executed by one Bond, on the 23d day of August, 1865. The note first maturing was paid, and Langsdale assigned the second to one Gay. When the note assigned to Gay matured, he instituted his action upon it and to foreclose the mortgage, making Langsdale and certain other junior incumbrancers parties as defendants. Langsdale filed an answer or cross complaint, setting up his notes and uniting with Gay in the request for the foreclosure of the mortgage. The decree is very long, and need not be set out at length. The facts found by the court ascertain in detail the rights of Gay, of Langsdale, and of the several junior incumbrancers and purchasers. The decree proceeds to adjudge to Gay a recovery of the amount then due on his note and a foreclosure of the mortgage upon the complaint and the cross complaint. It ascertains that the mortgaged premises were divisible into four parts, which are described, and not further divisible, and directs the sale of those parcels in a prescribed order, having reference to the equities of junior incumbrancers and purchasers. It was directed that, if, by the sale of one or more of these parcels, less than the whole of them, enough should be realized to pay Gay's note, then past due, the further selling should be

postponed, to be resumed when the first note still held by Langsdale should fall due, and that when enough had been sold to pay it, the further sale should be postponed, in like manner, and resumed when his last note should fall due. As to any surplus over the instalment actually due, that might be produced by any such sale, it was directed that it should be applied on the next maturing instalment. But as to the parcel numbered four, it was directed that no part of the proceeds to be derived from its sale should be applied on the two notes still held by Langsdale, he having released the mortgage as to that portion in favor of the purchaser of it.

The proceedings under the first order of sale issued are immaterial, as the sale made under that order was set aside. *Langsdale* v. *Mills*, 32 Ind. 380.

Upon the second order of sale, which was issued at the instance of Gay, the property was sold and purchased by Gay, realizing an amount sufficient to pay only his judgment. Gay received the sheriff's certificate, which he assigned to the appellants. Langsdale has received no part of the amount due him on his part of the mortgage debt. Within a year from the time of the sheriff's sale, Langsdale paid to the clerk the amount of the bid of Gay, with ten per cent. thereon, for the purpose of redeeming the property, and the clerk made an entry showing the redemption. The appellants, however, disregarded the redemption, and procured the sheriff to execute to them a deed, in pursuance of the certificate of purchase so assigned to them by Gay, etc. It is stated that Bond is insolvent.

The question is, has Langsdale a right to redeem the property, under the statute of 1861? The first section of that act is as follows: "That whenever, hereafter, any real property, or any interest therein shall be sold on any execution or order of sale issued upon any judgment, decree or other judicial proceeding within this State, the owner thereof, his heirs, executors, administrators, or any mortgagee or judgment creditor having a lien upon the same

may redeem such real property or interest therein, at any time within one year from the date of such sale by paying to the purchaser, his heirs or assigns, or the clerk of the court from which such execution or order of sale was issued for the use of said purchaser, his heirs or assigns, the purchase-money, with interest thereon at the rate of ten per cent. per annum."

The position assumed by the appellants, as stated in the brief of counsel, is, that Langsdale, the appellee, does not come within this statute, because he was himself a judgment and execution plaintiff, and, therefore, not authorized to redeem from his own sale, and also because he was neither "a mortgagee nor a judgment creditor having a lien," within the meaning of this statute.

We are inclined to give a liberal construction to this statute. The object of its enactment was to prevent the sacrifice of real estate when sold at sheriff's sale, by allowing it to be redeemed by the owner, or his heirs, executors, or administrators, or by any mortgagee or judgment creditor having a lien upon the same, within the year.

In *The State Bank* v. *Tweedy*, 8 Blackf. 447, the rights of parties holding notes secured by the same mortgage, first came before this court, and it was then said by the learned judge who delivered the opinion, after alluding to the fact that it was a question for the first time before the court, and after a reference to authorities: "It cannot be stated then, as a general proposition, that in this State, the assignment of any one of the notes secured by a mortgage, carries with it, either *pro rata* or *pro tanto*, a corresponding portion of the mortgage security; but, as appears from what has been said, the effect of such assignment is to carry a *pro tanto* interest in that security subject to the paramount claim of notes previously due. The different instalments in a mortgage, when secured by corresponding notes, may be regarded as so many successive mortgages, each having priority according to its time of becoming payable." Many

other cases have followed this, in which the same doctrine has been held and applied.

In *Crouse* v. *Holman*, 19 Ind. 30, it was held by this court that a judgment of foreclosure on one of the notes secured by a mortgage could not be pleaded as a bar to a subsequent suit on the same mortgage to enforce payment of another note, because the notes might properly be considered as so many successive mortgages and successive causes of action. See, also, *Sample* v. *Rowe*, 24 Ind. 208.

In the case under consideration, Langsdale was made a defendant, and set up his notes. A personal judgment was rendered in favor of Gay against Bond, and an order was made for the foreclosure of the mortgage as to the note held by Gay. Upon the cross complaint or answer of Langsdale, a judgment was rendered in his favor foreclosing the mortgage as to the notes held by him. In the case of *Langsdale* v. *Mills*, *supra*, this court held that, owing to the peculiar form of the judgment of foreclosure, there could be no sale to satisfy the notes held by Langsdale until after Gay's judgment was satisfied, and hence the first sale was set aside. It is clear, we think, that at any time before the sale, Langsdale might have redeemed by paying off the note held by Gay, according to the principles of equity, independent of the statute of 1861. *Murdock* v. *Ford*, 17 Ind. 52. Is there any reason why he may not do so after the sale, under the statute? He comes fully within the letter of the statute of 1861, authorizing a redemption of the land. He is a judgment creditor having a lien upon the same. He has a lien upon the land as fully as any other junior incumbrancer by judgment has. It is true that there has been a sale of the land, but the title is not passed by such sale. The title passes when the deed is made. Upon a redemption of the land the liens are not displaced or affected, except that the party redeeming has a lien for the amount paid to redeem. Section 3 of the act of 1861, and *The State, ex rel Allen,* v. *Sherill*, 34 Ind. 57. A sale, with a conveyance made after the expiration of the year from the date of the sale,

will, unquestionably, discharge the premises from any lien for the balance of the judgment on which the sale was made, as well as from the right of junior incumbrancers to redeem, under the statute, whatever may be their rights under the doctrines of equity with reference to redemption. But we cannot adopt the views of counsel for the appellant, that the mere sale of the premises, not consummated by a deed of conveyance, discharges the liens. If this were true, what would be the state of things upon a redemption within the year? Would the lien of all the incumbrancers be gone? If the mere sale discharged the liens, then the act of redeeming within the year must have the effect to revive them, or upon redemption no one would have any lien except only the party redeeming, who is given a lien by the statute.

We think we need not decide or examine the question, discussed by counsel, whether the judgment merges the mortgage or not, as Langsdale had a lien either by the mortgage or by the judgment. We think we ought to hold that, under the circumstances, the claim of Langsdale was so far separate and distinct from that of Gay that he is entitled to exercise the right to redeem, under the statute, as a junior incumbrancer. The case is unlike that where a sheriff has different executions in his hands in favor of different judgment plaintiffs, and sells on all the executions for the benefit of all the creditors. In that case each execution plaintiff can control his own execution, can allow the sheriff to sell upon it or not, and need not place himself in the position of one ordering and directing the sale if he does not wish to do so. In the case under consideration, this was not so. Gay, having the first and paramount claim, could order the execution of the judgment, and direct the time and manner of it, within the requirements of the law, notwithstanding anything that Langsdale might or could do, and the sale, when made by his order, must, in consequence of the form of the judgment, be made for the benefit of Langsdale, so

Davis *et al. v.* Langsdale.

far as any surplus was concerned, after the payment of the amount due to Gay. It does not appear that Langsdale united in, or consented to, the sale, except by setting up his claim at the date of the judgment. This he was bound to do, having been made a party to the suit, or his lien would have been endangered, if not lost. On the contrary, it may be inferred that he did not assent to it, as he was then asserting a claim under the prior sale, which sale was set aside, as shown in *Langsdale* v. *Mills, supra.*

We cannot think that, under the circumstances, the sale to Gay can, in any fair sense, be regarded as the sale of Langsdale, when he was not asking or assenting to it, but was opposed to its being made, although the surplus of the proceeds, after paying the claim of Gay, had there been any, might have been applied on his claim. The little control which Langsdale had in the execution of the judgment, had he been disposed to exercise it, is shown by the case of *Langsdale* v. *Mills, supra*, in which it was held that under the decree as entered there could be no sale to pay the notes held by him until Gay's notes were satisfied.

We have found nothing in the cases from other states, to which counsel have referred us, that has materially assisted us in the decision of the case. It depends almost entirely upon the language of the statute in question, while the cases to which we have been referred are based on statutes differently worded.

The judgment is affirmed, with costs.

*H. C. Newcomb, J. L. Mitchell, W. A. Ketcham, T. A. Hendricks, O. B. Hord,* and *A. W. Hendricks,* for appellants.

*J. E. McDonald, J. M. Butler, E. M. McDonald,* and *B. K. Elliott,* for appellee.